UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
PRICASPIAN DEVELOPMENT CORP.,             :

                                          :    08 Civ. 9724 (WHP)

                                          :
                        Plaintiff,             MEMORANDUM & ORDER

                                          :
                                               ┌─────────────────────────────┐
         -against-                             │ USDC SDNY                   │
                                          :    │ DOCUMENT                    │
TOTAL S.A.,                                    │ ELECTRONICALLY FILED        │
                                               │ DOC #:                      │
                        Defendant.        :    │ DATE FILED: 11/25/09        │
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X └─────────────────────────────┘

WILLIAM H. PAULEY III, District Judge:

         Plaintiff Pricaspian Development Corporation ("Pricaspian") seeks a declaratory

judgment that it is entitled to 20 percent of the profits that the Defendant Total S.A. ("Total")

will earn under an agreement with other oil companies and the Republic of Kazakhstan.  Total

moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  For the

following reasons, Total's motion to dismiss is granted.


                                    BACKGROUND

I.       The Present Action

         This action is one of Jack Grynberg's recent forays into federal court challenging

the development of an oil field under the Caspian Sea in western Kazakhstan.  See Grynberg

Prod. Corp. v. Eni S.p.A., No. 06 Civ. 6495 (RLC), 2009 WL 2482181 (S.D.N.Y. Aug. 13,

2009); Grynberg v. BP, P.L.C., 643 F. Supp. 2d 1 (D.D.C. 2009); Pricaspian Dev. Corp. v. Royal

Dutch Shell, No. 08 Civ. 9726 (DLC), 2009 WL 1564110 (S.D.N.Y. June 3, 2009); Grynberg v.

BP, P.L.C., No. 08 Civ. 6494 (RJH), 2008 WL 4450277 (S.D.N.Y. Oct. 1, 2008); Grynberg v.

                                          -1-

Total Compagnie Francaise des Petroles, No. 03 Civ. 1280 (WYD) (BNB), 2006 WL 1517731

(D. Colo. May 31, 2006), aff'd sub nom. Grynberg v. Total, S.A., 538 F.3d 1336 (10th Cir.

2008), cert. denied, 129 S. Ct. 1585 (2009); Grynberg v. Shell Exploration B.V., 433 F. Supp. 2d

1229 (D. Colo. 2006), aff'd sub nom. Grynberg v. Total, S.A., 538 F.3d 1336 (10th Cir. 2008),

cert. denied, 129 S. Ct. 1585 (2009); Grynberg v. B.P. Exploration, No. 04 Civ. 1622 (NRB),

2004 WL 1962079 (S.D.N.Y. Sept. 2, 2004). By this Court's count, eight district judges have

been called upon to adjudicate Grynberg's claims—two in Colorado, one in the District of

Columbia, and five in the Southern District of New York. Res judicata disposes of this action.

Pricaspian is a Texas corporation with its principal place of business in Colorado.

(Complaint for Declaratory Judgment dated Nov. 12, 2008 ("Compl.") ¶ 1.) Total is a French

corporation that does business in New York through two wholly-owned affiliates—Total Fina

Elf Services, Inc. and Total American Services, Inc. (Compl. ¶ 2.)

The Complaint alleges that Grynberg, the current President and owner of

Pricaspian, brought an oil field under the Caspian Sea known as the "Greater Kashagan" to

Total's attention in the early 1990s. (Compl. ¶¶ 8-13.) Specifically, in July 1990, Grynberg

informed Total of Kazakh interest in granting oil and natural gas rights in the Greater Kashagan

oil field to "a group of western oil companies . . . organized by Grynberg." (Compl. ¶¶ 11-12.)

Intrigued by that prospect, Total agreed "to discuss the terms of a mutually acceptable document

[with Grynberg]." (Compl. ¶ 11.) Pricaspian characterizes its declaratory judgment claims as

"expected" unjust enrichment because the oil fields are not yet commercially viable. (Compl. ¶¶

8, 15, 24.)

Under his agreement with Total, Grynberg had the right to "share in the profits of oil and natural gas production in accordance with any subsequent agreement to do so with the government of Kazakhstan." (Compl. ¶ 12.)  In return, Total received access to "Grynberg's highly proprietary, extremely valuable, confidential seismic and economic information concerning Greater Kashagan." (Compl. ¶ 13.)  Representatives from Total met with Grynberg in Colorado and secured access to his proprietary data. (Compl. ¶ 12.)  Grynberg subsequently assigned 99 percent of his interest in this agreement to his closely-held corporation Pricaspian. (Compl. ¶ 12.)

Thereafter, the Complaint alleges that Total "went around Grynberg" and negotiated directly with Kazakh officials to develop the Greater Kashagan oil field. (Compl. ¶ 13.)  The Republic of Kazakhstan concluded an agreement with Total and other oil companies on October 31, 2008 (the "October 2008 Agreement"). (Compl. ¶ 14.)   The October 2008 Agreement established a consortium for development of the Greater Kashagan oil field in which Total had a 16.81 percent stake. (Compl. ¶ 14.)

On November 12, 2008, Pricaspian (as assignee of Grynberg's rights in the Greater Kashagan oil field) filed this declaratory judgment action concerning the parties' rights and obligations under the October 2008 Agreement. (Compl. ¶¶ 15-26.)  Pricaspian also seeks a declaration that it is entitled to 20 percent of Total's net profits arising from the October 2008 Agreement and 20 percent of profits from the Greater Kashagan oil field. (Compl. ¶¶ 20, 26.)

II.    The Colorado Action

On July 17, 2003, Jack Grynberg, Grynberg Production Corporation, and

Grynberg Petroleum Company (the "Colorado Plaintiffs") filed a civil action in the District of

Colorado against Total for unjust enrichment and breach of fiduciary duty arising from the

development of an oil field in Kazakhstan. Grynberg v. Total Compagnie Francaise des Petroles,

No. 03 Civ. 1280 (WYD) (BNB), 2006 WL 1517731 (D. Colo. May 31, 2006), aff'd sub nom.

Grynberg v. Total, S.A., 538 F.3d 1336 (10th Cir. 2008), cert. denied, 129 S. Ct. 1585 (2009)

(the "Colorado Action"). The Colorado Plaintiffs alleged that Total appropriated Grynberg's

confidential information relating to the "largest oil, natural gas, and sulphur discovery in the

world in over 40 years." Grynberg, 2006 WL 1517731, at *1. The Colorado Plaintiffs also

claimed Grynberg provided Total representatives "confidential geological, seismic, and scientific

data confirming oil and natural gas deposits" in a large oil field under the Caspian Sea.

Grynberg, 2006 WL 1517731, at *3.

The Colorado Plaintiffs claimed that Grynberg provided this data on condition

that he "retain[] a fair share of the entire deal." Grynberg, 2006 WL 1517731, at *3. Their

complaint alleged that "several huge oil companies, including Total . . . [utilized] Grynberg's

confidential information . . . to determine the value and extent of . . . the Kazakhstan . . . [oil

field] . . .[and] . . . later went around Grynberg to Kazakhstan officials directly, cutting Grynberg

out of the entire deal." Grynberg, 2006 WL 1517731, at *4. The Colorado claims were based on

a November 18, 1997 Production Sharing Agreement (the "November 1997 Agreement")

executed by a group of oil companies known as the North Caspian Sea Consortium. Grynberg,

2006 WL 1517731, at *4. The November 1997 Agreement excluded Grynberg and defined the

-4-

oil production rights for each company in the consortium. Grynberg, 2006 WL 1517731, at *4.

The Colorado court granted summary judgment and dismissed the action, finding that the breach of fiduciary duty and unjust enrichment claims were barred by Colorado's three-year statute of limitations and doctrine of laches. Grynberg, 2006 WL 1517731, at *4. The district judge determined that "by 1999 Grynberg was aware not only that there was an expansive development taking place in the area of the North Caspian Sea that Grynberg viewed as valuable," but that "Grynberg knew or should have known . . . that Total had obtained actual production rights in the [oil field]." Grynberg, 2006 WL 1517731, at *6-7 (emphasis added).

In a consolidated appeal with another Grynberg action against Shell Oil Company, Shell Exploration, 433 F. Supp. 2d 1229 (D. Colo. 2006), the Tenth Circuit affirmed the district court judgments in their entirety. Shell Exploration, 538 F.3d at 1354-55. In its decision, the Court of Appeals considered Grynberg's rights in the Greater Kashagan oil field and held that Grynberg's claim for unjust enrichment arose when "Total obtained a benefit—a valuable interest—in the [oil field]." Shell Exploration, 538 F.3d at 1352-53. That interest, the Tenth Circuit observed, "certainly" came into existence with the execution of the October 1997 Agreement. Shell Exploration, 538 F.3d at 1353. Despite Grynberg's knowledge of this agreement, he waited almost six years to file a suit that was doomed by Colorado's statute of limitations and the doctrine of laches. Shell Exploration, 538 F.3d at 1353-54. On March 9, 2009, the Supreme Court denied certiorari. 129 S. Ct. at 1585.

-5-

DISCUSSION

I.      Legal Standard

On a motion to dismiss, this Court accepts the material allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  Nonetheless, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  In assessing whether this plausibility standard is met, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents [filed with the government], and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); see also Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

"The affirmative defense of res judicata may be invoked in connection with a motion to dismiss when it is clear from the complaint, and the matters of which the Court takes judicial notice, that the plaintiff's claims are barred as a matter of law."  Candelaria v. Erickson, No. 01 Civ. 8594 (LTS), 2007 WL 1793443, at *2 (S.D.N.Y. June 18, 2007).  The Court "may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.'"  Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (citations omitted).

## II.    Claim Preclusion

Under claim preclusion, "a final judgment forecloses 'successive litigation of the

very same claim, whether or not relitigation of the claim raises the same issues as the earlier

suit.'" Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (citations omitted).   Federal common

law governs this Court's application of claim preclusion to an earlier federal court judgment and

requires this Court to apply "the law that would be applied by state courts in the state in which

the [original rendering court] sits." Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497,

507-08 (2001). "[T]he traditional rule is that expiration of the applicable statute of limitations

merely bars the remedy and does not extinguish the substantive right." Semtek, 531 U.S. at 504.

Thus, the expiration of the limitations period in the state where the suit is first filed does not

necessarily bar relitigation in another jurisdiction with a longer statute of limitations period.

Semtek, 531 U.S. at 504, 508-09. Rather, a successive claim is barred only when the law of the

state where the original rendering court sits dictates that a statute of limitations dismissal is

preclusive in other jurisdictions. Semtek, 531 U.S. at 504, 508-09.

Semtek provides a three-step inquiry for determining the res judicata effect of an

earlier federal court diversity judgment: (1) whether the current claim is indeed similar enough to

the earlier judgment to be precluded, see Semtek, 531 U.S. at 508-09; (2) if precluded, whether a

statute of limitations dismissal in the state where the earlier judgment was obtained bars

relitigation in other jurisdictions, see Semtek, 531 U.S. at 503-04, 508-09; and (3) if the effect is

limited to the state of the earlier judgment, whether the statute of limitations in the jurisdiction

where the current claim is filed has also expired. See Semtek, 531 U.S. at 504; see also Smith v.

Woosley, 399 F.3d 428, 435-36 (2d Cir. 2005) (noting that Pennsylvania law barred pursuit of a

-7-

claim in other jurisdictions); Royal Dutch Shell, 2009 WL 1564110 (employing a similar process to dismiss an action filed by Pricaspian arising from a dispute over Greater Kashagan).

      1.  Identity of Claims

In diversity cases, courts apply the claim preclusion law of the state where the earlier judgment was obtained. Taylor, 128 S. Ct. at 2171 n.4 (citing Semtek, 531 U.S. at 508). Under Colorado law, "claim preclusion prevents relitigation of claims that were or could have been litigated in a prior proceeding." Gallegos v. Colorado Ground Water Comm., 147 P.3d 20, 32 (Colo. 2006) (en banc) (citing Argus Real Estate v. E-470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo. 2005)). The doctrine applies "where four elements exist: (1) finality of the first judgment; (2) identity or privity between parties to the actions; (3) identity of the subject matter; and (4) identity of the claims for relief." Gallegos, 147 P.3d at 32.

First, "[a] judgment for failure to comply with the statute of limitations is a judgment on the merits." Nwosun v. Gen. Mills Rest., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997). The Colorado court dismissed Grynberg's action with prejudice based on the statute of limitations and laches. Grynberg, 2006 WL 1517731, at *8-9. That dismissal was a final judgment. Grynberg, 538 F.3d at 1336, 1355.

Second, Colorado law requires "that the parties be the same as those in the first action or persons in privity with them." Cruz v. Benine, 984 P.2d 1173, 1176 (Colo. 1999). Pricaspian alleges it is the assignee of the natural resource rights material to this action. Further, Jack Grynberg is one of the original owners of the present claims, as well as Pricaspian's president. The relationship is more than a substantial identity of interest; indeed, it is a pure identity of interest. See Taylor, 128 S. Ct. at 2171 ("[P]reclusion may be justified based on a

-8-

variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a

party to the judgment . . . [including] . . . assignee and assignor."). Likewise Total and its

subsidiaries were the defendants in the Colorado Action.

   Third, both actions involve the same basic operative facts. See e.g., Argus Real

Estate, 109 P.3d at 608 (finding identity where both claims "involved the same parcel of land and

same agreement"); Miller v. Lunnon, 703 P.2d 640, 644 (Colo. Ct. App. 1985) (finding identity

of subject matter where both suits involved same sequence of facts). Both the Colorado Action

and this action concern Grynberg's acquisition of confidential information about the Greater

Kashagan oil field and his agreement to give Total this information. Compare Compl. ¶¶ 11-13

with Grynberg, 2006 WL 1517731, at *3-4 ("Grynberg alleges that '[t]he information supplied to

Total by Grynberg, and to other parties to the organization of western oil companies initiated by

Grynberg at the behest of the government of Kazakhstan, was specifically provided on condition

that Grynberg retained a fair share of the entire deal.'"). Both suits claim that Total used

Grynberg's information and formed a consortium with other oil companies without him or, in the

vernacular of his Complaint, by "cutting Grynberg out." Compare Compl. ¶ 20 ("cutting

Grynberg out of the deal") with Grynberg, 538 F.3d at 1341 ("cutting Grynberg out of the entire

deal"). Moreover, Grynberg's mirror complaints allege an entitlement to 20 percent of Total's

net profits from oil production in the Greater Kashagan oil field. Compare Compl. ¶ 20 with

Grynberg, 538 F.3d at 1347. The subject matter of both actions is clearly identical.

   Finally, an analysis of the similarity of the claims in successive actions focuses on

"the injury for which relief is demanded" and not "the specific claim asserted or the name given

to the claim." Argus Real Estate, 109 P.3d at 608-09 (citation omitted). Under Colorado law,

"claim preclusion bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the same injury." Argus, 109 P.3d at 609 (citing Farmers High Line Canal & Reservoir Co. v. City of Golden, 975 P.2d 189, 199 (Colo. 1999)). While this action seeks a declaratory judgment, Colorado law requires this Court to focus on the timing and nature of the injury.

In the Colorado Action, the Court of Appeals determined that Grynberg's injury accrued, at the latest, by 1999 "when Grynberg should have known that Total had obtained production rights in the [oil fields] to the exclusion of Grynberg." Shell Exploration, 538 F.3d at 1346. Pricaspian's argument to this Court that the October 2008 Agreement marks the moment of injury is a diversionary smokescreen. As the assignee of Grynberg's rights, Pricaspian stands in his shoes. See Farmers Acceptance Corp. v. DeLozier, 496 P.2d 1016, 1018 (Colo. 1972). If Grynberg's injury accrued in 1999, then so did Pricaspian's. The Tenth Circuit focused the inquiry on when Grynberg knew that Total was excluding him and not when a particular agreement was signed. See Grynberg, 528 F.3d at 1348 ("[W]e examine only when Grynberg knew or should have known that . . . Total had obtained a benefit from an interest somewhere in the [oil fields]."). Thus, Pricaspian's assertion that a new claim for unjust enrichment arose from the October 2008 Agreement misapprehends the law.[1] The claim arose only once—when Grynberg learned in 1999 that he had been excluded by the oil companies.

---

[1] Pricaspian suggests in its memorandum that the issue of whether New York or Colorado law applies is a matter of importance. However, the choice of law is irrelevant in this case because the elements of an unjust enrichment claim in both states are virtually identical. Compare Salzman v. Bachrach, 996 P.2d 1263, 1265-66 (Colo. 2000) (en banc) with Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006).

.

Accordingly, Pricaspian's present action is identical to the Colorado action.

Thus, this Court turns to the next step in the Semtek analysis: whether the Colorado judgment

prevents Pricaspian from suing in New York.

### 2.  Colorado's Statute of Limitations

In Colorado, "[the] statute of limitations . . . does not bar the right of action but

only the remedy." In re Randall's Estate, 441 P.2d 153, 155 (Colo. 1968) (citations omitted).

"Colorado subscribes to the 'traditional rule'" which permits relitigation in another jurisdiction

where the statute of limitations has not expired. See Royal Dutch Shell, 2009 WL 1564110, at

*16 (citing Matter of Estate of Hall, 948 P.2d 539, 541 n.3 (Colo. 1997) (citation omitted)).

Thus, the dismissal in the Colorado Action is a bar to litigation here only if New York's statute

of limitations on the claim has also expired.

### 3.  New York's Statute of Limitations

A claim for unjust enrichment in New York is subject to a three-year statute of

limitations period. N.Y. C.P.L.R. § 202 (2009). However, where a non-resident plaintiff files an

action in New York for claims accruing outside of the State, the non-resident's claim is subject

to the New York borrowing statute. N.Y. C.P.L.R. § 202. "In such actions, New York applies

the shorter of the statute of limitations between New York and the place where the cause of

action accrued." Royal Dutch Shell, 2009 WL 1564110, at *18. In New York, "a cause of

action accrues at the time and in the place of the injury." Global Fin. Corp. v. Triarc Corp., 715

N.E.2d 482, 485 (N.Y. 1999). The moment of accrual is the time and place when a plaintiff

could have sought judicial intervention. See Global, 715 N.E.2d at 485 ("Plaintiff possessed no

cause of action, in tort or in contract, anywhere in the world until he was injured.").

-11-

Pricaspian maintains its principal place of business in Colorado, and the injuries it sustained occurred in 1999 when it and Grynberg were doing business in Colorado. See Royal Dutch Shell, 2009 WL 1564110, at \*18-19 ("A corporation sustains economic injury in the states where it is incorporated and has offices."). Under C.P.L.R. § 202, the appropriate statute of limitations for the unjust enrichment claim is the shorter of New York's or Colorado's. As previously discussed, Pricaspian's claims have expired under Colorado law. Therefore, under C.P.L.R. § 202, Pricaspian's claims are also barred by the statute of limitations in New York.[2]

## CONCLUSION

For the foregoing reasons, Total S.A.'s motion to dismiss Pricaspian Development Corporation's Complaint is granted under Rule 12(b)(6). The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: November 25, 2009
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

---

[2] Because this Court finds that the Plaintiff's claims are barred by the prior litigation in Colorado, it need not wade into the nuanced world of personal jurisdiction. For purposes of this motion, the Court "relies on pleadings and affidavits, rather than a full-blown evidentiary hearing" and finds that Pricaspian has made a prima facie showing that the court possesses personal jurisdiction over Total. See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

*Counsel of record:*

Daniel Louis Abrams, Esq.
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza
Suite 1910
New York, NY 10005
*Counsel for Plaintiff*

Jennifer Lee Price, Esq.
King & Spalding, L.L.P.
1100 Louisiana Street
Suite 4000
Houston, TX 77002
*Counsel for Defendant*